UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAHER RHUMA, et al., | No. 2:20-cv-02366 JAM AC PS |
| Plaintiffs, | |
| v. | ORDER TO SHOW CAUSE (DIRECTED TO PLAINTIFFS) |
| STATE OF LIBYA, | |
| Defendant. | |

Plaintiffs are proceeding in this action pro se, and the matter was accordingly referred to the undersigned for pretrial proceedings by E.D. Cal. R. 302(c)(21). At the status conference on October 27, 2021, all three plaintiffs were present but defendant did not appear. ECF No. 16. At the hearing, the court inquired about service and the status of defendant's appearance in the case. This order follows.

I.      PROCEDURAL BACKGROUND

This case was filed on December 1, 2020. ECF No. 1. Plaintiffs are attempting to sue the State of Libya under the Foreign Sovereign Immunities Act for events that transpired in Libya decades ago; they seek compensation for the expropriation of a family business by the previous regime, and for the death in custody of a family member. Id. On January 12, 2021, plaintiffs filed a certificate of service. ECF No. 4. The return of service document states that personal service was completed upon defendant at "Ministry of Foreign Affairs and International

1

Cooperation – Ash Shatt St, Tripoli, Libya.  Received by Ramzi Mohammed Muktar." Id. at 2. The document is signed (presumably by server Younes Ahweej, although the signature itself is illegible) and dated December 24, 2020.  Id.  The Declaration of Server portion of the return form identifies the services provided as "special arrangements."  Id.

On January 29, 2021, the court received an unsigned document from defendant that responded to the summons and was construed and docketed as an answer.  ECF No. 5.  It states, in relevant part, that "Service of Process was served through a special agreement between the State of Libya and the Plaintiffs; Taher Rhuma, Khadija Kanoun, and Mohamad Laham.  The service of the documents was delivered to the Foreign Affairs Office located in Ash Shatt ST, Tripoli, Libya." Id. at 4.

At the October 27, 2021 status conference, the court questioned plaintiffs about the "special agreement" regarding service.  Plaintiffs explained that service had been arranged with the Libyan Ministry of Foreign Affairs by a Libyan attorney acting on plaintiffs' behalf. Plaintiffs stated that they do not know the identity of the individual or individuals within the Libyan government who had been party to the service arrangement, and that they had no direct communication with representatives of the State of Libya regarding the effectuation of service. The Libyan lawyer, Mohammed Al-Mayat (phonetic), handled all arrangements regarding service.

## II.   ADEQUACY OF SERVICE

The court is concerned that the defendant, the State of Libya, may not have been properly served.  It is fundamental that before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.  Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc., 840 F.2d 685, 688 (9th Cir. 1988) (stating that "[a] federal court does not have jurisdiction over a defendant unless the defendant has been served properly" under Federal Rule of Civil Procedure 4, which requires service of summons and complaint)).  Although the rule is liberally construed, "substantial compliance" is required and neither simply naming the defendant in the complaint or the defendant having actual notice is sufficient.  Id.

Pursuant to Federal Rule of Civil Procedure 4(j), a foreign state must be served in accordance with 28 U.S.C. § 1608.  The reference to Section 1608 of the Judicial Code incorporates the specific modes of service provided for in the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330, et seq., which is "the exclusive source of subject matter jurisdiction over all suits involving foreign states or their instrumentalities." Gupta v. Thai Airways Int'l, Ltd., 487 F.3d 759, 763 (9th Cir. 2007) (citation and quotation omitted); 28 U.S.C. § 1603(a).  Section 1608(a) provides that service upon a foreign state shall be made in one of the four following ways:

> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
>
> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned; or
>
> (4) if service cannot be made within 30 days under paragraph (3) by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

28 U.S.C. § 1608(a).

The proof of service filed in this case states that service was accomplished by "special arrangements," ECF No. 4 at 2, suggesting service under § 1608(a)(1).  However, no details of the special arrangement are provided, and subsequent events cast significant doubt on the efficacy of service.  Although the court received a document responsive to the complaint and summons, which appears on its face to come from the Libyan Ministry of Foreign Affairs, ECF No. 5, the document is unsigned, does not specify the name or title of the official who submitted it, does not

appear to have been prepared by counsel licensed to practice in this court, and is not in the form of an answer.  When a foreign state has been effectively served with a complaint under the Foreign Sovereign Immunities Act, that complaint is generally transmitted by the receiving entity (here, according to the proof of service, the Ministry of Foreign Affairs) to the governmental entity formally designated to appear in litigation on behalf of the government (typically the Department or Ministry of Justice), which then retains counsel to represent it in the forum country.  Absent any appearance through counsel of the Libyan designated entity, it is far from clear that service was effective.  Moreover, a court order mailed to defendant at the address provided for service was returned as undeliverable, and the time for defendant to submit a notice of change of address has expired.  See Docket entry dated August 25, 2021.

Service in this case cannot be considered adequate under any alternative subsection of the statute.  Section 1608(a)(2) authorizes service in accordance with an applicable international convention.  The Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters typically governs international service of process, including service on a foreign sovereign defendant, but the State of Libya is not a contracting party.  See Hague Conf. on Private Int'l Law, http://www.hcch.net/index_en.php?act=conventions.status&cid=17. The complaint and summons were not dispatched by the clerk of the court to the head of the ministry of foreign affairs for the State of Libya pursuant to § 1608(a)(3), or to the Secretary of State in Washington, D.C. for service through diplomatic channels pursuant to §1608(a)(4).

Accordingly, so that the court can evaluate the adequacy of service and determine whether it may exercise jurisdiction over the State of Libya, plaintiffs will be directed to provide additional information about the "special arrangement" for service.

### III.   CASE OR CONTROVERSY REQUIREMENT

At the status conference, the undersigned also raised the question whether this case presents an active case or controversy for the court to resolve.  Article III of the Constitution limits jurisdiction in federal courts to "cases" and "controversies."  U.S. Const., Art. III, § 2.  The document construed by the Clerk's Office as an answer, which is on letterhead bearing the name Government of National Accord, Ministry of Foreign Affairs, states that the Libyan State waives

4

sovereign immunity, admits all factual allegations of the complaint, acknowledges full liability for all damages alleged in the complaint, and agrees with plaintiffs' position on interest and adjustment for inflation.  ECF No. 5 at 2-3.  When asked why plaintiffs were pursuing litigation rather than settling directly with defendant if there was complete agreement between the parties as to both liability and the measure of damages, plaintiff Mr. Rhuma stated that federal court intervention was needed to access Libyan funds frozen in the United States for payment of the agreed upon compensation.  The document purportedly submitted on behalf of Libya "agrees to the request by the plaintiffs in allowing the Libyan state assets frozen in the United States to be used as a method of compensation."  ECF No. 5 at 3.

Assuming that this court has jurisdiction to approve a stipulated judgment in an appropriate case, and that such judgment is a necessary predicate for plaintiffs to pursue frozen assets,[1] the case cannot proceed without the appearance through counsel of the Libyan designated entity.  Only private individuals such as the plaintiffs may appear without a lawyer.  C.E. Pope Equity Trust v. United States, 818 F.2d 696 (9th Cir. 1987).  A foreign state, like any other entity defendant, must be represented by counsel who is licensed to practice in this court.  See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 201-202 (1993) (entities may appear in federal courts only through licensed counsel).  This court therefore cannot accept representations by Libyan officials that are not made through counsel.  These considerations dovetail with the required inquiry into the adequacy of service, because neither justiciability nor the availability of relief can be assessed absent proper appearance by the defendant.

### IV.   ORDER TO SHOW CAUSE

In accordance with the above, IT IS HEREBY ORDERED that plaintiffs must show cause in writing within 60 days of this order why this case should not be dismissed for lack of proper service.  Because plaintiffs requested at the status conference clear directions about what they should submit to the court, the following detailed guidance is provided.  Plaintiffs' response

---

[1] See, e.g., Bennett v. Islamic Republic of Iran, 927 F. Supp. 2d 833, 843 (N.D. Cal. 2013), aff'd, 799 F.3d 1281 (9th Cir. 2015), opinion withdrawn and superseded, 817 F.3d 1131 (9th Cir. 2016), and aff'd, 817 F.3d 1131 (9th Cir. 2016), and aff'd, 825 F.3d 949 (9th Cir. 2016).

should include, but is not limited to, sworn declarations from individuals with personal knowledge, whether plaintiffs themselves and/or the Libyan attorney who arranged service of the complaint,[2] that address the following questions:

1. What communications, if any, have the plaintiffs had (personally or through a third party) with Libyan government officials regarding the pursuit, filing, and/or service of this lawsuit? Please identify such officials by name and title.[3]
2. How was service of the summons and complaint arranged?
3. What were the terms of the arrangement for service? If the arrangement was put in writing, or is reflected in written communications including email, please provide copies (translated into English if necessary).
4. With what Libyan official(s) was the special arrangement made? Please identify any such official by name and title.
5. The proof of service form identifies Ramzi Mohammed Muktar as the individual who received the summons and complaint from the process server. Do plaintiffs or their Libyan attorney know Mr. Muktar's position at the Ministry of Foreign Affairs, and by what authority he accepted service?
6. The docket for this action lists Modammed [sic] Ammah Al-Shraidi as the contact person for defendant, presumably because he signed a form that was returned to the court with the response to the summons.[4] Do plaintiff or their Libyan attorney know who this individual is, including his title, and have they been in contact with him

---

[2] As noted, Mr. Rhuma represented that the Libyan attorney rather than any of the plaintiffs made the arrangements for service. It therefore appears that the lawyer's declaration is necessary for determination of the terms of the agreement, with whom it was negotiated, and related matters going to the legal effectiveness of service. If such a declaration is written in a language other than English, both the original and an English translation must be provided. If plaintiffs require additional time for this purpose, they may request an extension of time.

[3] The record is already replete with documentation of plaintiffs' attempts to secure compensation from the Libyan government over many years. This question is limited to communications regarding the intent to file and serve *this* lawsuit.

[4] This name does not appear on the document that was filed as an answer. The undersigned has been informed by the Clerk's Office that the name was obtained from an administrative form that was included with the response to the summons but to which the undersigned does not have access. See ECF No. 6.

regarding service of and/or response to the complaint?

7. In making arrangements for service, what constitutional or statutory authority (if any) did plaintiffs rely on for the belief that the person who accepted service on behalf of the State of Libya is legally authorized to do so?  Do plaintiffs know whether that person is the officially designated entity for purposes of representing the State of Libya in international litigation?

Plaintiffs are free to present any other facts or legal authority that is directly relevant to the questions whether service was effective and defendant's appearance legitimate.

IT IS SO ORDERED.

DATED: December 20, 2021

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE