UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAHER RHUMA, et al., | No. 2:20-cv-02366 JAM AC PS |
| Plaintiffs, | |
| v. | ORDER TO SHOW CAUSE (DIRECTED TO DEFENDANT) |
| STATE OF LIBYA, | |
| Defendant. | |

Plaintiffs are proceeding in this action pro se, and the matter was accordingly referred to the undersigned for pretrial proceedings by E.D. Cal. R. 302(c)(21). A status conference was held on October 27, 2021. Plaintiffs were present at the hearing, but defendant did not appear. ECF No. 16. At the hearing, the court inquired about service and expressed concern about the status of defendant's appearance. For the reasons explained below, the court will order defendant to show cause why its response to the summons and complaint, ECF No. 5, should not be stricken. A separate Order to Show Cause is issuing to plaintiffs, addressing the adequacy of service.

I. PROCEDURAL BACKGROUND

This case was filed on December 1, 2020. ECF No. 1. Plaintiffs are attempting to sue the State of Libya under the Foreign Sovereign Immunities Act for events that transpired in Libya decades ago; they seek compensation for the expropriation of a family business by the previous

regime, and for the death in custody of a family member.  Id.  On January 12, 2021, plaintiffs filed a certificate of service.  ECF No. 4.  The return of service document states that personal service was completed upon defendant at "Ministry of Foreign Affairs and International Cooperation – Ash Shatt St, Tripoli, Libya.  Received by Ramzi Mohammed Muktar."  Id. at 2.  The document is dated December 24, 2020.  Id.  The Declaration of Server portion of the return form identifies the services provided as "special arrangements."  Id.

On January 29, 2021, the court received an unsigned document from defendant that responded to the summons and was construed and docketed as an answer.  ECF No. 5.  The document is on letterhead bearing the name Government of National Accord, Ministry of Foreign Affairs, but does not provide the name or title of the individual who prepared and submitted it on behalf of the Government of Libya.  The Clerk's Office identified Modammed [sic] Ammah Al-Shraidi as the contact person for defendant and named him on the docket as a pro se party, presumably because he signed a form that was returned to the court with the response to the summons.[1]  Mr. Al-Shraidi's position (if any) with the Libyan Ministry of Foreign Affairs was not specified.

The response to the summons and complaint is in the form of a letter to the court and not in the form of an answer.  It presents a list of factual and legal "conclusions," which are represented as the official position of the Libyan government upon review of the complaint and of the government's internal records. ECF No. 5 at 2-3.  It states that Libya waives sovereign immunity, admits all factual allegations of the complaint, acknowledges full liability for all damages alleged in the complaint, and agrees with plaintiffs' position on interest and adjustment for inflation.  Id.  It "agrees to the request by the plaintiffs in allowing the Libyan state assets frozen in the United States to be used as a method of compensation."  Id. at 3.[2]  The document

---

[1] This name does not appear on the document that was filed as an answer.  The undersigned has been informed by the Clerk's Office that the name was obtained from an administrative form that was included with the response to the summons but to which the undersigned does not have access.  See ECF No. 6.

[2] At the status conference, plaintiffs were asked why they were pursuing litigation rather than settling directly with defendant if there was complete agreement between the parties as to both (continued…)

states: "What occurred in Libya these past decades is something we hope to acknowledge and make amends for and this is one of the steps we want to take in building a better Libya for our people and for the world." Id. at 2.

The letter proceeds to address the "questions that need to be answered," which are the enumerated matters to be addressed in an initial scheduling conference statement. Id. at 4-5. As to service, the document states that "Service of Process was served through a special agreement between the State of Libya and the Plaintiffs; Taher Rhuma, Khadija Kanoun, and Mohamad Laham. The service of the documents was delivered to the Foreign Affairs Office located in Ash Shatt ST, Tripoli, Libya." Id. at 4. The letter goes on to state, among other things, that the State of Libya will not request any motions or special proceedings in this case.

Following the docketing of this letter as an "answer," a court order mailed to defendant at the address provided for service was returned as undeliverable, and the time for defendant to submit a notice of change of address has expired. See Docket entry dated August 25, 2021.[3]

## II.   THE "ANSWER" IS IMPROPER ON ITS FACE

The court has reason to doubt the legitimacy of the answer filed purportedly on behalf of the State of Libya. It appears that this "answer" should be stricken. First, the document is not signed. Federal Rule of Civil Procedure 11(a) requires that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number." The Local Rules of this district also require all pleadings and non-evidentiary documents to be "signed by the individual attorney for the party presenting them, or by the party involved if that party is appearing in propria persona." Local Rule 131(b). The document filed at ECF No. 5 contains no signature or other required identifying information.

---

liability and the measure of damages. Plaintiff Mr. Rhuma stated that federal court intervention was needed to access Libyan funds frozen in the United States for payment of the agreed upon compensation.

[3] Pursuant to Local Rule 182(f), service of documents at an address previously provided by a party, which has not been updated, is fully effective. Accordingly, defendant is deemed to be aware of all documents filed in this case, and therefore is obligated to respond to this order. Defendant also remains obligated to file an updated or more comprehensive mailing address.

3

Second, the document gives no indication of having been prepared and filed by an attorney licensed to practice in this district. Only private individuals such as the plaintiffs may appear on their own behalf without a lawyer. C.E. Pope Equity Trust v. United States, 818 F.2d 696 (9th Cir. 1987). A foreign state, like any other entity defendant, must be represented by counsel who is licensed to practice in the forum. See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 201-202 (1993) (entities may appear in federal courts only through licensed counsel). The form of defendant's response suggests that it was not prepared and submitted by counsel: the document is unsigned, does not identify any law firm or licensed attorney, and is not formatted as a pleading. The substance of the document reflects lack of familiarity with federal civil procedure: the document combines material that belongs in an answer with that which belongs in a Scheduling Conference Statement, and it admits liability and damages without proposing a litigation schedule that reflects understanding of how to achieve a stipulated judgment or seek the unfreezing of foreign assets held in the United States (purportedly the goal of both parties).

For these reasons, defendant will be ordered to show cause why the "answer" should not be stricken as filed in violation of the Federal Rules of Civil Procedure and the Local Rules of the Eastern District of California.

But the court's concerns do not end here. Other observations cast further doubt on the propriety of the answer, and also raise the more fundamental question whether defendant has properly appeared in this case. Specifically, the response to the complaint gives no indication that it was submitted by a Libyan official designated to appear on behalf of the State of Libya in international litigation. It is the court's understanding that when a foreign state is served with a complaint under the Foreign Sovereign Immunities Act, that complaint is generally transmitted by the receiving entity (here, according to the record, the Ministry of Foreign Affairs) to the governmental entity formally designated to appear in litigation on behalf of the government (typically the Department or Ministry of Justice), which then retains counsel to represent it in the forum country. In other litigation against Libya in the courts of the United States, this process has resulted in defendant being represented by American counsel (that is, counsel licensed in the

United States and admitted to practice in the federal courts) retained by the Libyan government. See, e.g., Janvey v. Libyan Investment Authority, Case No. 3:11-cv-1177 N BG (N.D. Tex. 2011).[4]  The present Libyan government also well understands how to properly appear in the United States Courts to affirmatively represent its own interests.  See State of Libya v. Strabag SE, Case No. 1:20-cv-2600 DLF (D.D.C. 2020)[5]; Libya v. Miski, Case No. 1:06-cv-2046 RBW (D.D.C. 2006)[6]; Ex Parte Application of Libyan Asset Recovery and Management Office to Conduct Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. 1782, 1:21-mc-00852 JGK BCM (S.D.N.Y. 2021)[7]; see also Brief for Government of National Accord, State of Libya as Amicus Curiae Supporting Petitioner, Republic of Sudan v. Harrison, 139 S. Ct. 1048 (2017) (No. 16-1094).  Defendant's patently defective appearance here contrasts with this record of demonstrated sophistication in U.S. federal court litigation.

The problem in this case is not just that defendant's appearance and answer must be accomplished through counsel, but also that such counsel must be acting at the direction of the particular Libyan governmental entity that is officially designated to represent the State of Libya

---

[4] The undersigned takes judicial notice of the docket in this case, which indicates that the Libyan Investment Authority, a Libyan State entity, was represented by a law firm based in Dallas.  The previous Libyan regime was sued repeatedly in our federal courts, and regularly retained counsel to represent the designated State authority as defendant.  See La Reunion Aerienne v. Socialist People's Libyan Arab Jamahiriya, Case No. 1:05-cv-01932 RCL (D.D.C. 2005); Pflug v. Socialist People's Libyan Arab Jamahiriya, Case No. 1:08-cv-00505-JMF (D.D.C. 2008); Certain Underwriters at Lloyds London v. Great Socialist People's Libyan Arab Jamahiriya, Case No. 1:08-cv-00504 (D.D.C. 2008); Est. of Buonocore v. Great Socialist People's Libyan Arab Jamahiriya, Case No. 1:08-cv-00529-JMF (D.D.C. 2008).  The current government no doubt also has lawyers in its Ministry of Justice, if not in its Ministry of Foreign Affairs, who understand how to respond to service of process from an American court.

[5] The undersigned takes judicial notice of the docket in this case, which indicates that the State of Libya was represented by a law firm based in Washington D.C.  In this case, Libya petitioned to vacate an arbitration award.

[6] This trademark infringement case was filed by the previous regime, but the new government was substituted when it came to power.  See id., ECF No. 131 (Memorandum Opinion filed Sept. 6, 2012), p. 1 at n.1; see also ECF No. 125 (plaintiff's motion to substitute party to reflect new names of Libyan Government Plaintiffs).  The undersigned takes judicial notice of the docket in this case, which indicates that Libya was represented by a law firm based in Washington D.C.

[7] The undersigned takes judicial notice of the docket in this case, which indicates that the State of Libya was represented by a law firm based in New York City.  This miscellaneous case was brought by the Libyan Asset Recovery and Management Office of the Government of National Unity, which is responsible for recovery of assets misappropriated by the previous regime.

in international litigation. There has been no showing here that the Ministry of Foreign Affairs or any of its officials are authorized to appear on behalf of Libya in the courts of United States, which is an entirely different question than whether the Ministry of Foreign Affairs is authorized to receive service. The fact that a response to the complaint was submitted which appears to have been prepared by a layperson strongly suggests that the usual protocol has not been followed; it also raises the question whether the response was submitted by an official who has the authority to appear in this court on behalf of the Libyan government. This case cannot proceed without the appearance through counsel of the Libyan designated entity. Accordingly, defendant will also be ordered to show cause why its appearance in this action is proper.

### III. ORDER TO SHOW CAUSE

In accordance with the above, IT IS HEREBY ORDERED that defendant must show cause in writing within 60 days of this order (1) why the answer in this case should not be stricken for the reasons stated above, and (2) why its appearance in this case is proper. Defendant's response must include a showing that the individual or entity responsible for submission of the letter dated December 28, 2020, ECF No. 5, is the official or entity designated by law to appear on behalf of the State of Libya in international litigation.

IT IS SO ORDERED.

DATED: December 20, 2021

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE