1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    TAHER RHUMA, et al.,                    No.  2:20-cv-02366 DAD AC PS

12              Plaintiffs,

13        v.                                  ORDER AND FINDINGS AND
                                              RECOMMENDATIONS
14    STATE OF LIBYA,

15              Defendant.

16

17        Plaintiffs are proceeding in this action pro se, and the matter is accordingly before the

18   undersigned for pretrial proceedings pursuant to E.D. Cal. R. 302(c)(21).  The complaint was

19   filed in late 2020, and defendant has never properly appeared.  For the reasons set forth below,

20   the undersigned recommends that the case be dismissed as barred by res judicata as to plaintiffs

21   Taher Rhuma and Khadija Kanoun, and that the claims of remaining plaintiff Mohamad Laham

22   be dismissed for failure to prosecute and to follow court orders.

23                    I.        PROCEDURAL BACKGROUND

24      A.  Overview

25        The procedural history of this action is highly unusual, and will be set forth in some detail

26   below to provide context for the issues addressed herein.  Plaintiffs are attempting to sue the State

27   of Libya under the Foreign Sovereign Immunities Act for events that transpired in Libya decades

28   ago.  They seek compensation for the 1976 expropriation of a family business—a brick factory—

by the previous regime.  A previous pro se lawsuit, brought by other members of the plaintiffs' family, also sought recompense for the seizure of the family's business.  See Rhuma et al. v. State of Libya ("Rhuma I"), Case No. 2:13-cv-02286 MCE AC.  That action was dismissed for lack of subject matter jurisdiction.  Id. at ECF Nos. ECF No. 36, 38, 39.  The judgment was affirmed on appeal.  Id. at ECF Nos. 43, 44.

The instant case has not progressed past the service stage in over two years.  Both the efficacy of service and the status of defendant's appearance have been the subject of protracted proceedings which have failed to advance the case, as detailed below.

B.  Initial Service and First Purported Response to Complaint

The complaint in this case was filed by pro se plaintiffs Taher Rhuma, Khadija Kanoun and Mohamad Laham on December 1, 2020, naming the State of Libya as the sole defendant. ECF No. 1.  On January 12, 2021, plaintiffs filed a certificate of service.  ECF No. 4.  The return of service document stated that personal service had been completed upon defendant State of Libya at "Ministry of Foreign Affairs and International Cooperation – Ash Shatt St, Tripoli, Libya.  Received by Ramzi Mohammed Muktar."  Id. at 2.  Mr. Muktar's position at the Ministry was not specified.  The document was dated December 24, 2020, and identified the services provided by the process server as "special arrangements."  Id.[1]

On January 29, 2021, the court received via international mail an unsigned letter, in English, on letterhead reading "Government of National Accord, Ministry of Foreign Affairs." ECF No. 5 at 2.  The letter failed to identify its creator by name or title, and it gave no indication of having been drafted by counsel.[2]  Because the letter responded substantively to the summons and complaint, it was docketed as a pro se answer by the Clerk's Office although it was neither captioned as an answer nor in the form of an answer.  ECF No. 5.  The letter contained a list of

---

[1]  As the court has previously noted, this language appears to have been intended as a reference to 28 U.S.C. § 1608(a)(1), which provides for service on a foreign state by special arrangement between the parties.  See ECF No. 21 at 5.  The court found there was no evidence of such a "special arrangement" in this case.  Id. at 5-6.

[2]  To the contrary, the letter was so far from compliance with the rules of civil procedure that the court inferred it was not drafted or submitted by a lawyer, let alone an attorney licensed to appear in this court.  See ECF Nos. 18, 20.

2

factual and legal "conclusions," which were represented to be the official position of the Libyan government upon review of the complaint in this case and of the government's internal records. Id. at 2-3.  It stated that Libya waived sovereign immunity, admitted all factual allegations of the complaint, acknowledged full liability for all damages alleged in the complaint, and agreed with plaintiffs' position on interest and adjustment for inflation.  Id.  It stated further that Libya "agrees to the request by the plaintiffs in allowing the Libyan state assets frozen in the United States to be used as a method of compensation." Id. at 3.  Following receipt of this letter, mail from the court to defendant at the address provided was repeatedly returned as undeliverable.

A status conference was held on October 27, 2021.  Plaintiffs appeared via zoom; there was no appearance on behalf of defendant.  ECF No. 16.  Numerous irregularities related to service were discussed.  Two orders to show cause issued thereafter.  The OSC directed to plaintiffs (ECF No. 17) addressed the efficacy of service, and that directed to defendant (ECF No. 18) addressed the propriety of the "answer" and the status of defendant's appearance.

Plaintiffs responded to the OSC regarding service.  By order filed March 8, 2022, the court found that service had not been properly accomplished pursuant to 28 U.S.C. § 1608(a).  ECF No. 21.  Plaintiffs were granted 90 days to effect service, and they were provided information on the process for serving a foreign state under 28 U.S.C. § 1608(a)(3), which provides for delivery of documents by the Clerk's Office.  Id.

The State of Libya did not respond to the OSC directed to it.  By separate order also filed on March 8, 2022, the undersigned ordered the document filed as an answer to be stricken, for several reasons: the document was not signed; it was not filed by counsel; it did not appear to have been submitted by a government official with authority to take litigation positions on behalf of the defendant nation; it did not comply with the Federal Rules of Civil Procedure; and its provenance and legitimacy were suspect.  ECF No. 20.

C.  Subsequent Service

Plaintiffs next attempted service under 28 U.S.C. § 1608(a)(3), which provides for the clerk of the court to deliver service documents "to the head of the ministry of foreign affairs of the foreign state concerned."  When service is pursued under this section of the statute, it is

3

1    plaintiff's responsibility to provide the Clerk's Office with the name, title, and address of the

2    official to be served.  See ECF No. 21 at 6-8 (requirements for service pursuant to 28 U.S.C. §

3    1608(a)(3)).  Plaintiffs provided the required documents (ECF No. 25) and the Clerk's Office sent

4    them to Libya on June 8, 2022 (ECF No. 26).

5            On July 25, 2022, plaintiffs filed proof of service indicating that the summons and

6    complaint had been delivered to the Libyan Ministry of Foreign Affairs, Ash Shatt St., Tripoli,

7    Libya on June 19, 2022.[3]  ECF No. 27.  Neither the proof of service nor any of the materials

8    submitted to the Clerk's Office by plaintiffs specified the name and title of the official to be

9    served.  See ECF Nos. 25 (and attachments), 27.

10           D.   Status of Libya's Appearance

11           Following apparent delivery of the summons and complaint to the Libyan Ministry of

12   Foreign Affairs in June 2022, there has been no appearance of record on behalf of the State of

13   Libya.  Plaintiffs took no action to advance the case, and accordingly on November 2, 2022, the

14   court ordered them to show cause why the case should not be dismissed for failure to prosecute.

15   ECF No. 31.  Plaintiffs were informed that the filing of a motion for default judgment would

16   discharge the OSC, and the standards for default judgment were explained.  Id.

17           Plaintiffs filed a response stating that their legal advisor in Libya had contacted the Libyan

18   Foreign Affairs office and discovered that an answer was sent to the State Department in

19   Washington, D.C., with instructions that it be delivered to this court.  ECF No. 32.  By order filed

20   November 28, 2022, the court explained that this representation did not change the fact that

21   defendant had failed to appear in the case; plaintiffs were granted an additional 30 days to take

22   action contemplated by the Federal Rules to advance the case.  ECF No. 33.  Plaintiffs were again

23   warned that failure to advance the case would result in a recommendation for dismissal.  Id. at 2.

24           On December 27, 2022, plaintiffs filed a document captioned Response to Order to Take

25   Action.  ECF No. 34.  They represent that "Plaintiffs contacted the legal affairs consular office in

26   the State Department who confirmed they received a document from the Defendant concerning

27

28   _____

[3] This is the same address at which personal service had been ineffectively attempted in
December 2020.

1  this case and that they will be forwarding it to the Court."  Id. at 2.  Plaintiffs argue that Libya has

2  acted properly in attempting to utilize "diplomatic channels" to communicate with the court.  Id.

3  at 2, 6.  They seek the court's assistance in obtaining the document and having it filed as an

4  answer.  More specifically, plaintiffs "request a court order to enforce the Legal Affairs Consular

5  Affairs State Department office to produce the documents."  Id. at 4.  In the alternative, plaintiffs

6  request a subpoena for the documents.  Id. at 5.  Finally, they explain that they have obtained a

7  digital version of the answer from their contact in Libya.  Id. at 6.  The document, a copy of

8  which is attached to plaintiffs' response to the OSC, is a one-paragraph memorandum on the

9  letterhead of the Ministry of Foreign Affairs and International Cooperation, signed by Rashid

10  Saleh Elsegayer Abu Guffa, Director of Management Affairs and Finance, and dated August 17,

11  2022.  Id. at 8.  It is titled "Response to Complaint" and reads in full as follows:

12
13
14
15
16
17

> The State of Libya received on June/19/2022 the FSIA statute, Summons, Notice of Suit, Affidavit of Translator and Complaint with their Arabic translations referencing case number 2:20-cv-02366-JAM-AC with the Plaintiffs; Taher Rhuma, Khadijia Kanun, and Mohammed Laham.  We the "Government of National Unity" acknowledge that the Libyan State under the previous administration, "Government of National Accord," sent an answer regarding this matter.  The current administration the "Government of National Unity" accepts all points from the answer sent by the "Government of National Accord" but does not accept the interest rate of 10%.

18  Id. at 8.

19       The undersigned construes plaintiff's Response to Order to Take Action as a motion for

20  miscellaneous relief.  So construed, it will be denied for the reasons now addressed.

21       II.     DEFENDANT'S STATUS AND PLAINTIFFS' REQUESTS AT ECF NO. 34

22       The submission of documents by a Libyan official to the U.S. State Department does not

23  and cannot constitute a court filing or an appearance in this case.  See Rule 5(d), Fed. R. Civ.

24  Proc. (governing filing); E.D. Cal. R. ("Local Rule") 133 (governing filing and contents of

25  documents); Local Rule 182(a) (governing appearance as attorney of record).  As the court has

26  explained to plaintiffs, the State Department does not file pleadings on behalf of a foreign state.

27  See ECF No. 33 at 2 n.2.  Plaintiffs say they understand this, but that "what is happening here is

28  the State Department is forwarding diplomatic documents from a foreign government to the

5

court." ECF No. 34 at 2. Pleadings are not "diplomatic documents," however, and passing them along through "diplomatic channels" cannot result in their filing or constitute an appearance in a lawsuit.

The Federal Rules of Civil Procedure and the Local Rules of this court establish the procedures that must be followed for parties to appear and for pleadings and other documents to be filed. Appearance is the responsibility of a defendant who has received service of a summons and complaint, and neither the court nor the plaintiffs have the power to effect an appearance by a defendant who has not appeared directly on its own behalf, pursuant to the rules. Accordingly, the court will not issue any orders or subpoenas to the State Department regarding the document at issue.

In any case, the putative "Response to Complaint" dated August 17, 2022, could not be accepted as an answer even if it had been submitted directly to the court by signatory Rashid Saleh Elsegayer Abu Guffa. The document suffers from almost all the same defects as the document that was previously stricken as an answer. See ECF No. 21 (order striking "answer" at ECF No. 5). Government entities can appear in the courts of the United States only through counsel licensed to practice in the jurisdiction. See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 201-202 (1993) (recognizing that only individuals may represent themselves without licensed counsel; entities including governmental entities must appear through counsel); see also Local Rule 180 (requirements for attorneys). Accordingly, a letter submitted by an individual cannot under any circumstances be accepted as a pleading on behalf of a government.

Other factors that caused the undersigned to be skeptical of the last purported answer are also present here. Although the name and title of the letter's author are provided this time, it appears highly unlikely that a "management and finance director" within Libya's Ministry of Foreign Affairs would have the legal authority to take positions in litigation on behalf of the national government. In international litigation, it is typically the Justice Department or Ministry of Justice of a defendant nation state that retains counsel in the jurisdiction where litigation is pending, and then works with counsel to defend or resolve the lawsuit. There is nothing before

the court to indicate that in Libya it is the Ministry of Foreign Affairs that has this authority to conduct litigation.[4]  And even if the Ministry were so authorized, the Minister himself would not be able to appear or file documents except through counsel.

In the past the undersigned has also expressed concern about the volume of mail sent from the court to the address of record for the Ministry of Foreign Affairs that has been returned as undeliverable.  Plaintiffs have now explained that mail service between the United States and Libya is frequently, and currently, unavailable.  ECF No. 34 at 3.  For present purposes, the court will accept this representation and draws no inferences from the return of mail about the accuracy of the address that appears on the docket for the Libyan Ministry of Foreign Affairs.  But the chronic return of mail also highlights the larger problem: the failure of defendant State of Libya to properly appear through counsel in the action.  Because this court utilizes electronic filing, and reserves service by mail for individuals proceeding in pro se, there would be no need for recourse to international mail had Libya appeared through counsel as the law requires.

In sum, defendant has not appeared in this case.  Neither of the documents representing themselves to be official Libyan responses to the complaint can be accepted as answers under the Federal Rules of Civil Procedure, and neither has any legal effect whatsoever.

It may well be that various individuals in the current and recent Libyan administrations are willing to acknowledge that plaintiffs—like a great many other Libyans—were grievously harmed by the actions of the notorious regime that ruled Libya in the 1970s and for decades thereafter.  It may well be that sympathetic members of government wish to support plaintiffs' claims, particularly as plaintiffs seek not a money judgment against the current government but an order that frozen Libyan assets held in the United States (the ill-gotten gains of the Gaddafi regime) be released to compensate them.[5]  The court is sympathetic to what plaintiffs appear to have suffered.  But if the State of Libya wanted to enter this lawsuit for the purpose of assisting

---

[4]  The Minister of Foreign Affairs is the official who typically accepts international service on behalf of a nation state, and then refers the complaint to the department responsible for litigation.
[5]  Plaintiffs confirmed the court's understanding of the relief they seek at the initial scheduling conference on October 127, 2021.

1    plaintiffs, it knows how to do so.[6]  It has not.

2          For all these reasons the motion for miscellaneous relief at ECF No. 34 will be denied.

3                              III.     RES JUDICATA

4          Although the undersigned has previously ordered plaintiffs to take action to advance the

5    case, it now appears that any further litigation by plaintiffs Taher Rhuma and Khadija Kanoun

6    would be inappropriate.  For the reasons now explained, the court concludes that the 2015

7    dismissal of Rhuma I, Case No. 2:13-cv-02286 MCE AC, has preclusive effect on the question of

8    subject matter jurisdiction and that this action must likewise be dismissed at least as to plaintiffs

9    Taher Rhuma and Khadija Kanoun.

10      A.  Legal Standards

11         The legal doctrine of res judicata "bars repetitious suits involving the same cause of action

12   once a court of competent jurisdiction has entered a final judgment on the merits."  United States

13   v. Tohono of Odham Nation, 563 U.S. 307, 315 (2011) (internal quotation marks omitted).  Res

14   judicata prevents the litigation of claims for, or defenses to, recovery that were previously

15   available to the parties, regardless of whether they were asserted or determined in the prior

16   proceeding.  Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 378 (1940).  "Res

17   judicata is applicable whenever there is (1) an identity of claims, (2) a final judgment on the

18   merits, and (3) privity between parties."  Tahoe–Sierra Preservation Council Inc. v. Tahoe

19   Regional Planning Agency, 322 F.3d 1064, 1077 (9th Cir. 2003) (internal quotation marks

20   omitted).

21         The doctrine of res judicata "applies to jurisdictional issues as well as substantive issues."

22   Americana Fabrics, Inc. v. L & L Textiles, Inc., 754 F.2d 1524, 1529 (9th Cir. 1985).  "A

23   dismissal for lack of subject matter jurisdiction is not 'on the merits' of the underlying substantive

24   question; however, it is 'on the merits' of the issues necessary for the determination of

25   jurisdiction."  In re Blanchard, 545 B.R. 18, 35 (Bankr. C.D. Cal. 2016) (internal quotations

26

27   _____

     [6]  As the undersigned has previously noted, the Libyan national government under various
28   administrations has demonstrated its ability to retain American counsel to represent it in the
     courts of the United States.  See ECF No. 18 at 5 (collecting illustrative cases).

1  omitted); <u>see also</u> 18A Fed. Prac. & Proc. Juris. § 4435 (2d ed.) ("A dismissal for lack of subject-

2  matter jurisdiction ... does not preclude a second action on the same claim in a court that does

3  have subject-matter jurisdiction, but does preclude relitigation of the question whether the first

4  court had subject-matter jurisdiction.").

5       Thus, where there is an identity of claims and privity between the parties, a determination

6  in a prior case that the court lacked subject matter jurisdiction has a preclusive effect for the

7  purposes of a subject matter jurisdiction determination in a second case.  <u>See</u> <u>Gupta v. Thai</u>

8  <u>Airways Int'l, Ltd.</u>, 487 F.3d 759, 767 n. 11 (9th Cir. 2007) (applying California preclusion law);

9  <u>Comer v. Murphy Oil USA, Inc.</u>, 718 F.3d 460, 469 (5th Cir. 2013) ("Although a jurisdictional

10 ruling is technically not an adjudication on the merits, it has long been the rule that principles of

11 res judicata apply to jurisdictional determinations—both subject matter and personal.") (citations

12 and quotation marks omitted).

13     B.  <u>Rhuma I</u>

14       In <u>Rhuma I</u>, Case No. 2:13-cv-02286 MCE AC, plaintiffs Ahmed T. Rhuma and Sam J.

15 Duval brought suit under the Foreign Sovereign Immunities Act alleging that the expropriation

16 of the Rhuma family's brick manufacturing business by the previous Libyan regime violated

17 international law.  The case was dismissed for lack of subject matter jurisdiction on the ground

18 that the complaint did not support an exception to FISA immunity.  <u>Rhuma I</u>, ECF Nos. 36, 38.

19     C.  <u>Analysis</u>

20         1.  <u>Identity of Claims</u>

21       In <u>Rhuma I</u>, Ahmed T. Rhuma and Sam J. Duval sought legal relief as beneficiaries of

22 their deceased fathers, Taher Rahab Rhuma and Abdulwaed Ragab Rhoma, respectively, for

23 expropriation of their family's property in 1977.  <u>Rhuma I</u>, ECF No. 1; ECF No. 15 at 2, 5.  The

24 property at issue was a company located in Libya called The National Industrial Company for

25 Minerals ("NIMCO").  <u>Id.</u> at ECF No. 36 at 3.  Similarly, the operative complaint in the case at

26 ////

27 ////

28 ////

bar (<u>Rhuma II</u>), is based on the 1977 taking of NIMCO by the Libyan government.  ECF No. 25-4 at 5.[7]

Because both cases arise out of the same incident or series of events, there is an identity of claims for res judicata purposes.  "The fact that res judicata depends on an 'identity of claims' does not mean that an imaginative attorney may avoid preclusion by attaching a different legal label to an issue that has, or could have, been litigated. . . .  Newly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action."  <u>Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency</u>, 322 F.3d 1064, 1077–78 (9th Cir. 2003).  Here, the nucleus of facts is identical: in both <u>Rhuma I</u> and this case, the claims arise from events surrounding the taking of NIMCO by the Libyan government in 1977.[8]  There are no new facts asserted, and all relevant takings took place in the 1970s.  This element is satisfied.

2.  <u>Final Judgment on the Merits</u>

<u>Rhuma I</u> was dismissed for lack of subject matter jurisdiction under FISA.  <u>Rhuma I</u>, ECF Nos. 36, 38, 39.  The dismissal was appealed and affirmed by the Ninth Circuit.  <u>Id.</u>, ECF Nos. 40-44.  As explained above, this dismissal is "on the merits" of the issues necessary for the determination of jurisdiction.  <u>In re Blanchard</u>, 545 B.R. at 35.  Indeed, at least one federal court has specifically held that "dismissal of a prior action based on lack of jurisdiction under the FSIA bars the plaintiff's subsequent action under res judicata."  <u>Samco Glob. Arms, Inc. v. Republic of Honduras</u>, No. 10-20196-CIV, 2012 WL 13008165, at *4 (S.D. Fla. Jan. 25, 2012), <u>report and recommendation adopted in part</u>, No. 10-20196-CIV, 2012 WL 1372197 (S.D. Fla. Mar. 29, 2012), aff'd, 511 F. App'x 828 (11th Cir. 2013).[9]  The undersigned agrees with the reasoning and

---

[7]  <u>See</u> ECF No. 30 (deeming document at ECF No. 25-4 the operative complaint).

[8]  The present complaint also contains allegations about the custody-related death of the elder Mr. Rhuma in 1980.  ECF No. 25-4 at 21-13.  The only cause of action is for the unlawful taking of property in violation of international law, however.  <u>Id.</u> at 8.

[9] The proposition of law quoted above was upheld in the partial adoption of the cited Report and Recommendations.  However, the district judge found that new facts that had arisen after the dismissal of the first case altered the analysis, finding "that the preclusion doctrines do not prevent a plaintiff from asserting jurisdictional *facts that arose after the dismissal of the first case* in a second case on the same cause of action."  <u>Samco Glob. Arms, Inc. v. Republic of Honduras</u>,

1 conclusion of the Samco court.

2       Accordingly, this element is met for res judicata purposes as it relates to the issue of

3 subject matter jurisdiction.

4       3.   Privity Between Parties

5       Rhuma I and this case are brought against the same defendant, the State of Libya.  When

6 parties are identical, they are "quite obviously in privity."  Tahoe Reg'l Plan. Agency, 322 F.3d at

7 1081.  The question here is whether the plaintiffs, who are not identical, are in privity for the

8 purpose of res judicata.

9       "'Privity'—for the purposes of applying the doctrine of res judicata—is a legal conclusion

10 'designating a person so identified in interest with a party to former litigation that he represents

11 precisely the same right in respect to the subject matter involved.'"  In re Schimmels, 127 F.3d

12 875, 881 (9th Cir.1997) (quoting Southwest Airlines Co. v. Texas Int'l Airlines, Inc., 546 F.2d

13 84, 94 (5th Cir.1977)).  Familial relationship does not necessarily create privity, though it is a

14 factor in determining preclusive effects for res judicata purposes.  Trevino v. Gates, 99 F.3d 911,

15 924 (9th Cir.1996).  "Even when the parties are not identical, privity may exist if there is

16 'substantial identity' between parties, that is, when there is sufficient commonality of interest."

17 Tahoe Reg'l Plan. Agency, 322 F.3d at 1081 (internal citations omitted).  The Ninth Circuit has

18 held that privity is a "flexible concept dependent on the particular relationship between the

19 parties."  Id.  Several relationships have been previously identified as creating privity:

20

21           Federal courts have deemed several relationships "sufficiently close"
            to justify a finding of "privity" and, therefore, preclusion under the
22           doctrine of res judicata: "First, a non-party who has succeeded to a
            party's interest in property is bound by any prior judgment against
23           the party. Second, a non-party who controlled the original suit will
            be bound by the resulting judgment. Third, federal courts will bind a
24           non-party whose interests were represented adequately by a party in
            the original suit." In addition, "privity" has been found where there
25           is a "substantial identity" between the party and nonparty, where the
            nonparty "had a significant interest and participated in the prior
26           action," and where the interests of the nonparty and party are "so

27 No. 10-20196-CIV, 2012 WL 1372197, at *7 (S.D. Fla. Mar. 29, 2012), aff'd, 511 F. App'x 828

28 (11th Cir. 2013) (emphasis added).  Here, there are no new jurisdictional facts that arose after
   dismissal of Rhuma I.

11

closely aligned as to be virtually representative." Finally, a relationship of privity can be said to exist when there is an "express or implied legal relationship by which parties to the first suit are accountable to non-parties who file a subsequent suit with identical issues."

Id. (quoting In re Schimmels, 127 F.3d 875, 881 (9th Cir. 1997)).

Here, the analysis as to plaintiffs Rhuma and Kanoun is clear, as they are direct successors to the same property interest held by plaintiff Ahmed T. Rhuma in the first case.  In Rhuma I, plaintiff Ahmed T. Rhuma was the son of Taher Rahab Rhuma, who was a founder and partial owner of NIMCO.  Rhuma I, ECF No. 15 at 2, 5.  In this case, Taher Rhuma is the grandson of Taher Rahab Rhuma and plaintiff Khadija Kanoun is the widow of Taher Rahab Rhuma.  ECF No. 25-4 at 13.  The same stake in NIMCO is at issue.  There is no question that these parties are in privity.

The relationship of plaintiff Mohammad J. Laham to the parties in Rhuma I is less clear.  In Rhuma I, Sam J. Duval was the son of Abdulwaed Ragab Rhoma, also a partial owner in NIMCO.  Rhuma I, ECF No. 15 at 2, 5.  Mr. Duval is not a plaintiff in this case, and neither are any of his successors in interest.  Instead, plaintiff Mohamad J. Laham is present; he is the son of Mahmoud J. Laham, to whom Taher Rahab Rhuma sold half of his interest in NIMCO before the company was confiscated by the Libyan government.  ECF No. 25-4.  There is no apparent familial or legal relationship between Sam J. Duval or Ahmed T. Rhuma and Mohammad J. Laham.  Accordingly, there is no basis for a finding that Mohammad J. Laham is in privity to the parties in Rhuma I.

    4.  Conclusion as to Preclusive Effect of Rhuma I

Because Rhuma I involved identical claims and resulted in a final judgment on the merits as to subject matter jurisdiction, that judgment precludes consideration of this suit as to the plaintiffs who are in privity with the Rhuma I parties: Taher Rhuma and Khadija Kanoun.  The question of subject matter jurisdiction was resolved adversely as to them in Rhuma I.  Accordingly, the claims of these plaintiffs must be dismissed as barred by res judicata.

////

////

12

1

IV.    PLAINTIFF MOHAMAD LAHAM

2

A.    Failure to Prosecute and to Obey Court Orders

3        As the procedural history recited earlier in this order amply illustrates, the case has not

4   proceeded past the pleading stage in over two years because plaintiffs have been unable to

5   effectively launch the action.  The first round of attempted service resulted in an unauthorized

6   "appearance" that purported to bind a sovereign nation to a complete admission of liability for

7   events that occurred decades ago.  Sua sponte court action was required to essentially restart the

8   litigation.  The undersigned provided both an opportunity for and instructions regarding how to

9   accomplish foreign service.  Although the Clerk of Court then caused the summons and complaint

10  to be delivered to the address provided by plaintiffs pursuant to 28 U.S.C. § 1608(a)(3), the

11  efficacy of that service remains highly dubious due to plaintiff's failure to comply with all

12  pertinent directives.

13        Plaintiffs had been ordered to provide a letter of request for service to the Clerk of Court

14  that included the "name(s), title(s) and address(es) of the person(s) to be served."  ECF No. 21 at

15  6-7.  The letter that plaintiff provided did not specify by name and title any person to be served,

16  but simply identified the Ministry of Foreign Affairs in Tripoli as the intended recipient.  ECF

17  No. 25.  The summonses were directed generically to The State of Libya, without reference by

18  name or title to any specific Libyan official who is authorized to receive service.  ECF Nos. 25-2,

19  25-3, 25-4.  This was exactly what plaintiffs had done when serving the complaint for the first

20  time themselves.  It was because that attempt at service had resulted in a highly irregular response

21  from an unknown Libyan functionary that plaintiffs were ordered to provide more specific

22  information to the Clerk in order to ensure service on the correct official.  See ECF No. 21.

23        Whether or not the language of § 1608(a)(3)[10] is satisfied by the Clerk's delivery of

24  documents to the street address provided by plaintiffs, the fact remains that plaintiffs did not do as

25  they were directed by the Court.   The result has been continued confusion about the status of

26

_____

27  [10]  The statute provides for service dispatched by the clerk of the court to "*the head* of the
ministry of foreign affairs of the foreign state concerned."  Id. (emphasis added).  As explained
more fully below, the record does not support a conclusion that the head of the ministry received

28  service.

1    service and the inability of plaintiffs to advance their case.

2    Plaintiffs have disregarded the Federal Rules of Civil Procedure in other ways.  The

3    complaint that was included in the second service package, ECF No. 25-4, was not the complaint

4    that had been previously filed.  In the interests of efficiency, the court deemed this document to

5    be the operative complaint.  ECF No. 30.  Plaintiffs also disregarded the federal rules in

6    attempting to have the Guffa memorandum, ECF No. 34 at 8, accepted as an answer.  They failed

7    to take any action, when specifically instructed by the court to do so, that would advance the case

8    in a manner contemplated by the Rules.  Plaintiffs have taken the position that service by the

9    Clerk was effective, in which case a request for entry of default and subsequent motion for default

10   judgement would be expected.  Plaintiffs were informed of this procedure and failed to follow it.

11   In any event, the pursuit of default judgment at this point would not advance the case

12   because default judgment cannot be granted where service was defective.  See S.E.C. v. Internet

13   Solutions for Business Inc., 509 F.3d 1161, 1165-66 (9th Cir. 2007) (defective service renders a

14   default judgment void because a court lacks personal jurisdiction over a defendant who has not

15   been properly served).  A director of management affairs and finance (Mr. Guffa), whatever his

16   status in government, is plainly not the "head of the ministry of foreign affairs."  See §

17   1608(a)(3).  Accordingly, the purported response to the complaint by Mr. Guffa, which has been

18   provided to the court third-hand by plaintiffs, does not support a conclusion that the proper

19   Libyan official—presumably the Minister of Foreign Affairs—was actually served.  Without

20   clear indication that service has been accomplished on the Minister himself, or on a designee

21   authorized under Libyan law to accept service of process on behalf of the sovereign state, this

22   court lacks jurisdiction over the defendant and is powerless to take action in this case.

23   The proof of service filed by plaintiffs does not establish that service was effective.  The

24   return of service form that was included in the service packet, ECF No. 25-10, was never

25   returned.  Nor was any alternative affidavit submitted to acknowledge receipt of service.  See

26   Rule 4(l)(2)(B), Fed. R. Civ. P. (service outside United States must be proved by a receipt signed

27   by the addressee, or by other evidence satisfying the court that the summons and complaint were

28   delivered to the addressee).  Rather, plaintiffs submitted a DHL Express receipt showing that the

14

package was signed for by someone named "Hamza." ECF No. 27. This evidence does not satisfy the court that the summons and complaint was actually delivered to the Minister of Foreign Affairs.

A curable failure to prove service, without more, does not affect the validity of service. Rule 4(l)(3), Fed. R. Civ. P. Here, however, the totality of the circumstances before the court demonstrates a failure of proper service. Accordingly, a default judgment motion cannot be entertained and the court can take no other action in the case. Given the troubled service history and the age of the case, the undersigned concludes that it would be an exercise in futility to provide yet another attempt at service. Every courtesy has been extended to the pro se plaintiffs thus far, but the case cannot be allowed to languish on the court's docket.

Plaintiffs' failure to accomplish proper service and to follow court orders amounts to a failure to prosecute the lawsuit. Plaintiffs have twice been warned that they faced a dismissal for failure to prosecute, ECF Nos. 31 & 33, but they have failed to take any action that can advance the litigation. As to remaining plaintiff Mohamad Laham, the case should therefore be dismissed without prejudice for failure to prosecute and to obey court orders, pursuant to Fed. R. Civ. P. 41(b) and Local Rule 110.

B. Jurisdiction

The undersigned has considered whether to recommend dismissal with prejudice for lack of jurisdiction, but concludes that this is unwarranted as to the plaintiff who is not barred by res judicata on the jurisdictional issue. The Foreign Sovereign Immunities Act is the "the sole basis for obtaining jurisdiction over a foreign state in our courts." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989). Under FSIA, foreign states are presumptively immune from suit in federal and state courts, subject to enumerated exceptions. See Embassy of the Arab Republic of Egypt v. Lasheen, 603 F.3d 1166, 1169 (9th Cir. 2010); see also 28 U.S.C. § 1604. These exceptions "focus on actions taken by or against a foreign sovereign." In re Republic of Philippines, 309 F.3d 1143, 1150 (9th Cir. 2002).

The operative complaint affirmatively asserts the following bases for jurisdiction under FSIA, each of which reflects a statutory exception to sovereign immunity: (1) the commercial

1   activity exception; (2) the international takings exception; and (3) torture by a state sponsor of

2   terrorism.  ECF No. 25-4 at 2-3, 13, 20, 24.  The court need address only the first of these.  The

3   commercial activity exception applies in any of three situations, including where "the action is

4   based upon a commercial activity carried on in the United States by the foreign state."  28 U.S.C.

5   § 1605(a)(2).[11]  In this context, "commercial activity" means "either a regular course of

6   commercial conduct or a particular commercial transaction or act."  28 U.S.C. § 1603(d).  In

7   determining whether an activity is commercial, the court looks to the nature of the activity rather

8   than its purpose.  Siderman de Blake v. Republic of Argentina.  965 F.2d 699, 708 (9th Cir.

9   1992).  The central question is whether the activity is of a kind in which a private party might

10  engage.  Id.

11          Commercial activity by a foreign state is "carried on in the United States" when it has

12  "substantial contact with the United States."  28 U.S.C. § 1603(e).  Under this definition, the

13  foreign state need not engage in commercial activity in the United States on a regular basis.  Id.

14  (citing Shapiro v. Republic of Bolivia, 930 F.2d 1013, 1018 (2d Cir. 1991)).  Instead, the critical

15  inquiry is whether there is "a nexus between the defendant's commercial activity in the United

16  States and the plaintiff's grievance."  America West Airlines, Inc. v. GPA Group, Ltd., 877 F.2d

17  793, 796 (9th Cir. 1989).

18          The gravamen of the complaint in this case is the alleged armed seizure of a brick

19  manufacturing company, NIMCO, by the Libyan regime in 1976 or 1977.  The company had

20  been founded by Taher Rhuma (grandfather of plaintiff Taher Rhuma) and his business partners

21  in 1968; the elder Mr. Rhuma sold half of his shares to Mahmoud Laham in 1975 before the

22  company was taken over.  The operative complaint alleges that prior to the expropriation of the

23  factory, NIMCO was engaged in exporting its products to the United States.  After seizing

24  _____

25  [11]  The exception also applies when the action is based "upon an act performed in the United
    States in connection with a commercial activity of the foreign state elsewhere," or when the
26  action is based "upon an act outside the territory of the United States in connection with a
    commercial activity of the foreign state elsewhere and that act causes a direct effect in the United
27  States[.]"  28 U.S.C. § 1605(a)(2).  Satisfaction of any one of the three clauses is sufficient for a
    claim to fall within this FISA exception.  Siderman de Blake v. Republic of Argentina, 965 F.2d
28  699, 708 (9th Cir. 1992).

1    control, the Libyan government continued to conduct business both in Libya and in the United

2    States just as the private owners had done.  ECF No. 25-4 at 11-12.  These allegations appear to

3    satisfy the commercial activity exception to sovereign immunity under FSIA.  The manufacture

4    and export of building supplies is plainly commercial activity, and trade with clients in the United

5    States constitutes activity carried on in the United States.  There is a direct nexus between the

6    Libyan government's operation of NIMCO to conduct trade with the United States and plaintiff's

7    grievance regarding the regime's seizure of the company.

8          Accordingly, the face of the complaint contains adequate jurisdictional facts.  The

9    undersigned therefore does not recommend dismissal of the remaining plaintiff's claim for lack of

10   jurisdiction.  Rather, dismissal should be for the reasons previously addressed.

V.      CONCLUSION

12         For the reasons set forth above, IT IS HEREBY ORDERED THAT the document at ECF

13   No. 34 is construed as a motion for miscellaneous relief and as such is DENIED.

14         IT IS FURTHER RECOMMENDED that this action be DISMISSED as to plaintiffs

15   Taher Rhuma and Khadija Kanoun with prejudice for lack of jurisdiction based on res judicata,

16   and as to plaintiff Mohamad Laham without prejudice for failure to prosecute and to follow court

17   orders.

18         These findings and recommendations are submitted to the United States District Judge

19   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty one days

20   after being served with these findings and recommendations, any party may file written

21   objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a

22   document should be captioned "Objections to Magistrate Judge's Findings and

23   Recommendations."  Any response to the objections shall be filed with the court and served on all

24   parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file

25   objections within the specified time may waive the right to appeal the District Court's order.

26   ////

27   ////

28   ////

1   Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57

2   (9th Cir. 1991).

3   DATED: March 29, 2023

4

5                                                  ALLISON CLAIRE
                                                   UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28